JULIA TIPTON HEATHER v. CITY OF PALMYRA ET AL., Appellants.—
298 S. W. 750.

Court en Banc, September 27, 1927.

1. **MANDAMUS: Final Judgment: Further Review: Contempt.** A final judgment in mandamus, affirmed upon appeal, ordering and directing the mayor and council of a city to make a levy and collect taxes and apply the proceeds, in accordance with the statute (Sec. 1685, R. S. 1919), to the payment of a final judgment against the city rendered in an action for negligent personal injuries, is conclusive, and its validity cannot be further assailed on any ground in a collateral proceeding, such as an attack upon an order of commitment for a contumacious evasion and persistent disobedience to the peremptory writ issued in pursuance to such judgment.

2. ————: **Disobedience to Peremptory Writ: Contempt: Defenses: Appeal from Order of Commitment.** The defenses and contentions allowable in an appeal from an order committing appellants for contemptuous disobedience to a peremptory writ issued upon a final judgment of mandamus, are much narrower and more restricted than those permissible when the propriety of issuing the peremptory writ itself is before the court for determination. On such an appeal the only questions for consideration are what the peremptory writ commanded appellants to do, and whether they contemptuously refused to obey its commands.

3. ————: **Mayor and Council: Command to Levy and Collect Taxes.** A judgment in mandamus and a peremptory writ commanding the mayor and council to levy and collect taxes and to use the proceeds, after paying salaries, in paying a judgment against the city, can be obeyed. The city collector is appointed by them, and if he persistently refuses to turn over the taxes collected, they can remove him from office or sue him on his bond, or at least decline to re-elect him after his refusal.

4. ————: **Collector's Commissions: Contempt: Studied Evasion of Court's Order.** If the mayor and councilmen of a city, defendants in a mandamus judgment ordering them to levy and collect taxes and use the proceeds, after deducting the reasonable salaries of the officers named in the statute, in paying a personal judgment against the city, are in doubt as to whether said order permitted the city collector to deduct her usual commissions for collecting the taxes, ordinary respect for the court, upon her refusal to pay over the taxes collected, requires them to apply to the court for a modification of the order; but where the evidence and record clearly show that they made no such application, but applauded her refusal to pay over the taxes collected on the ground that the judgment made no provision for the payment of her commissions, and further show that, after the order,

upon the application of the judgment creditor, was so modified as to require the collector to pay over the taxes less commission, they encouraged her to persist in her refusal to pay over any part of the taxes collected, in order that they might have an excuse for disobeying the order and refusing to pay said judgment, as is shown by their reappointment of her after her continuous refusal, their conduct was contumacious and in contempt of the court's order.

5. ———: ———: **Contradictory Orders.** The fact that the mandamus order commands the defendant mayor and councilmen to approve the settlement of the city collector with the amount of her commission deducted from the taxes collected and tendered, and that the order of commitment directs that defendants remain committed until the commands of the peremptory writ of mandamus be complied with, without mentioning a deduction of her commissions, does not render the order void on its fact for indefiniteness or uncertainty, nor make it impossible of observance, in view of the court's modification of the peremptory writ so as to permit the deduction of the commissions; but a contention that the order is void for those reasons, is wholly without merit.

6. ———: **Waiver of Collector's Commissions by Judgment Creditor: Abandonment of Statutory Right: Parties to Contempt Proceeding.** A request by the plaintiff in a personal judgment against the city that the peremptory writ ordering the mayor and council to levy and collect taxes to pay the judgment be so modified as to permit the commissions of the city collector to be deducted from the amount of taxes that are to be applied to such payment, is not an abandonment of his right to proceed under the statute (Sec. 1685, R. S. 1919) which authorizes the court to make an order commanding that the taxes collected shall be applied to the payment of such a judgment except such an amount as is necessary to pay the salaries of named city officers. The statute does not mention the collector as one of the officers whose salary is to be deducted, but a request by the judgment creditor that the commissions be deducted is in no sense a waiver of his rights under the statute. The plaintiff in the judgment against the city is not a party to a proceeding to commit the mayor and councilmen for a refusal to obey the commands of the peremptory writ, but such contempt proceeding is one between the public, as represented by their constituted court, and such officers as refuse to obey the writ; and in such proceeding the judgment plaintiff can waive nothing, and the contemptuous officers cannot complain that the writ permits the deduction of the commissions.

7. **CONTEMPT: Order of Commitment: Notice: Due Process: Good Faith.** Where the order to show cause why defendants should not be adjudged guilty of contempt was pending for over a year, it was continued from term to term, they were notified at the making of the order and were present and represented at every step of the proceeding, there is no basis for a contention that they had no notice of or a hearing upon the complaint by which they were adjudged guilty of contempt, and because of a lack of such notice were denied due process of law; and their lack of good faith is shown by the fact that, after the citation was issued, they agreed to comply with the peremptory writ and subsequently attempted to evade its commands.

8. **JUDGMENT: Contempt: Guilty of This Court and Its Judgments.** A judgment adjudging the defendants "guilty of this court and its judgments, in wilfully, contumaciously and intentionally disobeying, as well as continuing to wilfully, intentionally and contumaciously disobey, said peremptory writ of mandamus heretofore issued by this court" contains a finding of every necessary fact authorizing the court to commit defendants for contempt, and the finding that they were "guilty of this court and its judgments," and the court's failure to use technical language adjudging them

"guilty of contempt of this court and its judgments," did not invalidate the order of commitment, or prejudicially affect the substantial rights of defendants, nor is it necessary, in view of the other words used, to remand the cause in order that a judgment technically accurate may be entered.

---

Corpus Juris-Cyc References: **Contempt**, 13 C. J., Section 7, p. 7, n. 23; Section 121, p. 81, n. 55. **Mandamus**, 38 C. J., Section 721, p. 935, n. 76; Section 735, p. 939, n. 49, 50.

Appeal from Macon Circuit Court.—*Hon. Vernon L. Drain*, Judge.

AFFIRMED.

*J. F. Culler* and *Hay & Flanagan* for appellants.

(1) A municipal officer cannot be held to be guilty of contempt of court for failing to do that which under the law governing his official conduct he has no authority or power to do. United States v. Labette, 7 Fed. 318; State ex rel. Poole v. Willow Springs, 183 S. W. 589; Hambleton v. Town of Dexter, 89 Mo. 188; Rice v. Walke, 44 Iowa, 458. The defendants were adjudged guilty of failing to do that which under the law they had neither the authority nor the power to do. (2) Before one can rightfully be held to be guilty of contempt of court and ordered committed to jail therefor, there must be a finding and judgment that such a person has failed to do some definite and specific thing which has been theretofore commanded by the court. State ex rel. v. Willow Springs, 183 S. W. 589. (3) Mandamus is a legal and not an equitable remedy. Of necessity, it is a stern, harsh writ, and when issued is an unreasoning, inflexible peremptory command to do a particular thing specified, without consideration, limitation or terms of any kind. Every step, therefore, taken in enforcing a right under this writ should be taken with great care, caution and particularity. State ex rel. v. Bank, 174 Mo. App. 589; State ex inf. v. Gas Co., 254 Mo. 515; Phillips v. Amalgamated Co., 208 Fed. 335. (4) The defendants were found and adjudged to be guilty of contempt without a finding that they were guilty of a failure to do any particular or specified act, and were committed to jail, there to remain until such time as they shall have performed certain acts without in anywise specifying or indicating the acts to be performed in order to end their commitment. (5) The commands of the judgment are impossible of observance in this that whereas the court orders defendants to approve the settlement of the collector with her commissions deducted from the amount tendered, the order of commitment directs that defendants remain committed until the commands of the peremptory writ of mandamus be com-

plied with. This writ does not authorize a deduction of the collector's commission. The judgment is, therefore, void on its face for indefiniteness and uncertainty. (6) When a defendant is charged with a failure to comply with an order of court, he must be proceeded against with a formal accusation and is entitled to notice of the particular complaint and charges against him and to a hearing thereon. In re Clark, 208 Mo. 121; Ex parte Nelson, 251 Mo. 63; Greene Co. v. Rose, 38 Mo. 380; Cooke v. United States, 267 U. S. 517; In re Baum, 169 Fed. 410; 13 C. J. 65. (7) The defendants herein were never, in the entire proceeding, which ended in their commitment to jail, charged with any formal manner with the failure to do and perform any particular thing, were never given a trial for the failure to perform any specific or particular thing, and were not in fact adjudged to be guilty of the failure to perform any specific thing. They were not, therefore, accorded a trial before their sentence and commitment to the county jail, all in violation of their rights guaranteed by the Constitution of Missouri and the Fourteenth Amendment to the Constitution of the United States. Pennoyer v. Neff, 95 U. S. 714. (8) The plaintiff undertook to proceed against defendants under Sec. 1685, R. S. 1919. This section purports to authorize a judgment commanding defendants to levy, assess and collect taxes and apply the money raised thereby to the payment of plaintiff's judgment after first deducting from the amount raised the reasonable salary of the mayor, council, assessor, marshal, constable, attorney, and a reasonable police force of the city. The statute does not except the collector. It follows, therefore, that when plaintiff offered to waive the commission or salary of the collector, she abandoned her right to proceed under the statute and is left without any remedy in this case. (9) No Legislature can have authority to render a municipality powerless to protect or be embarrassed in the protection of the public health, safety and morals. State v. Mississippi, 101 U. S. 814. (10) Sec. 1685, R. S. 1919, in undertaking to compel a municipality, with the charter powers and type of municipal organization of the city of Palmyra, to divert revenues essential to the discharge of the municipality duties, under its charter and to the maintenance of its organic life as a municipality, was an invalid exercise of legislative power. All proceedings designed to divert funds essential to the above-stated purposes should be held invalid. State ex rel. Poole v. Willow Springs, 183 S. W. 589.

*Glahn & Diemer, Rendlen & White* and *Matthews & Jones* for respondent.

(1) The peremptory writ of mandamus was issued in strict compliance with Sec. 1685, R. S. 1919, and it was the duty of defendants

to obey the same in good faith, without equivocation, subterfuge or evasion. Heather v. City of Palmyra, 311 Mo. 32. (a) This statute has long been in force; it applies to all Missouri municipalities, including Palmyra, and has always been held valid and reasonable in its liberality to sulky and stubborn city governments that do not want to pay their judgment debts or obey the orders of our courts. Sec. 1685, R. S. 1919; State ex rel. Cassidy v. Slavens, 75 Mo. 508; Hubbell v. City of Maryville, 85 Mo. App. 165; State ex rel. v. Norvell, 80 Mo. App. 180; Hartman v. City of Brunswick, 98 Mo. App. 764; Hembleton v. Dexter, 89 Mo. 188; Heuntschell v. Cook, 201 S. W. 364; State ex rel. v. Willow Springs, 183 S. W. 589; 26 Cyc. 307. (b) Appellants cannot complain because the plaintiff in order to end appellants' frivolous excuse, waived the $130.77 of commissions claimed by their collector. Same was not to their prejudice, but to plaintiff's. Thereby plaintiff in no sense abandoned her right to the provisions of Section 1685. (c) "The writ of mandamus was originally a high prerogative one, and used only in extreme cases, but with the great development of modern business it has been found to be one of the most necessary and efficacious tools of the law to insure that public officials do their duty, and it seems to be accepted generally as the proper procedure in cases like this." Town of Flagstaff v. Gomez, 242 Pac. 1003; United States v. New Orleans, 98 U. S. 381; Coy v. Lyons, 17 Iowa, 1, 85 Am. Dec. 539 and note. (2) The defendants were committed for contempt of the Circuit Court of Macon County and for contempts specified in Chap. 21, Art. I, R. S. 1919, and the particular circumstances of their offenses were set forth in the warrant of commitment as provided in Sec. 2362, R. S. 1919. The final judgment recites the whole history of the case, and provides that the commitment shall contain a certified copy thereof. There was a formal accusation, notice, appearance, hearing and judgment. (a) The record is replete with evidence of a studied effort and purposeful intention on the part of the appellants to wilfully disobey the processes and orders lawfully issued by the court. The court had full power to punish appellants for those contempts. Sec. 2359, R. S. 1919. (b) All necessary and proper steps leading up to said commitment were duly and timely taken, as provided in Chap. 21, R. S. 1919. (3) The City Collector of Palmyra is a mere appointive ministerial officer appointed by and removable at the will of the defendants, the Mayor and City Council. She was the creature of their will and direction. (a) The defendants seek to hide behind her skirts. The plaintiff waived the matter of her commissions; the court, on November 8, 1926, directed and ordered the defendants to accept and approve her settlement with the city for taxes collected by her to June 15, 1926, less said commissions, and apply the same in accordance with said peremptory writ of mandamus on or before

November 11, 1926, and to file in court by ten o'clock that day, their report showing said settlement and the application of said funds. Instead of complying, which was a necessary step toward and in compliance with the writ of mandamus in the cause, appellants, on November 11, 1926, filed a return that the collector of the city had not paid over to the defendants or the treasurer of the city any sum of money since said order of November 8, 1926, and that she had not tendered any money, although the court found she was willing to pay same over and she also so testified.   (b)   Appellants, upon approving the settlement with the collector, had power to direct the treasurer or custodian to make application thereof to the payment of plaintiff's judgment.   Each and every such step is clearly within the orders of the court requiring proper application of the revenues collected and available under the court's order, and that appellants take all necessary and lawful steps to the liquidation of appellants' judgment.

BLAIR, J.—Appeal from the order of the Macon County Circuit Court adjudging the mayor and councilmen of the city of Palmyra guilty of contempt of court for disobedience of a peremptory writ of mandamus theretofore issued by said circuit court, in aid of the collection of a judgment against said city in favor of Mrs. Julia Tipton Heather. The mayor and councilmen appealed. Certain constitutional questions were raised below which brought the case here.

The proceedings, which culminated in the order from which the appeal was taken, have been long drawn out and are not without interest. Mrs. Heather brought an action for personal injuries against the city of Palmyra in the Circuit Court of Marion County. By successive changes of venue, the case reached the Circuit Court of Macon County, where she obtained a judgment against the city in the sum of $7000. Said judgment was affirmed by the Kansas City Court of Appeals.   [245 S. W. 390.]

When the mandate of the Kansas City Court of Appeals went down, execution was issued upon the judgment and was returned wholly unsatisfied. Thereupon Mrs. Heather sought and the Circuit Court of Macon County issued its alternative writ of mandamus (which writ upon final hearing, as hereafter noted, was made peremptory), whereby the mayor and councilmen of Palmyra were commanded, from year to year as occasion might require, to make a levy of taxes at the rate of fifty cents on each one hundred dollars of assessed valuation upon property within the corporate limits of said city, to collect said taxes and to apply the proceeds thereof to the payment of Mrs. Heather's judgment, until the same was paid in full "except such amount of said annual taxes as may be necessary to pay the reasonable salary allowed the mayor, councilmen, assessor, mar-

shal, constable, attorney and a reasonable police force for said city of Palmyra.'' Said mayor and councilmen were enjoined from using any part of said taxes so assessed, levied and collected, except as in said peremptory writ specified. The order made and the exception as to payment of salaries of certain designated officers were in attempted compliance with Section 1685, Revised Statutes 1919.

After unsuccessfully moving for a new trial in the mandamus proceeding, the mayor and councilmen of Palmyra sued out a writ of error in this court where the order of the Macon County Circuit Court was affirmed, as reported in Volume 311, page 32, of our official reports (276 S. W. 872).

The mandate of this court reached, and was filed in, the Macon County Circuit Court on October 30, 1925. On November 10, 1925, the mayor and councilmen filed in said court a paper designated as ''Report to Peremptory writ of Mandamus,'' wherefrom it appeared that assessments and levies of taxes for the years 1923, 1924 and 1925 had been made at the rate required by the peremptory writ and that the moneys collected for 1923 and 1924, under said fifty-cent levy, had been legally expended under the provisions of Section 1684 (1685), Revised Statutes 1919, and also for maintaining a reasonable police force for said city and providing adequate facilities in order that said police force might effectively perform its duties and functions. It was alleged that no balance from the tax collections of 1923 or 1924 remained on hand, although the fifty-cent rate had been levied. Said report concluded as follows:

''Further answering and reporting in this matter, these respondents state and show to the court that in the event there should be a balance left out of the taxes to be paid upon the 1925 assessment and levy, after paying the items as set out in said writ, it would be unlawful for these respondents to pay said balance as directed by said writ, and that said respondents would be guilty of misfeasance in office, because Section 1685 of the Revised Statutes of Missouri, 1919, under which said payments are commanded to be paid by said writ, is in conflict with that clause of Section 1 of the Fourteenth Amendment to the Constitution of the United States, which clause provides that 'no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'

''And now, having fully reported as required by said peremptory writ of mandamus, the said city of Palmyra, its mayor and its councilmen, ask to be hence dismissed without a day.''

On November 11, 1925, counsel for Mrs. Heather filed a motion asking that the mayor and councilmen be cited for contempt for the

reason that the report of November 10, 1925, filed by said city officials, "is contemptuous, and in effect says that while said defendants have for the year 1925 levied the tax as required in said peremptory writ of mandamus, which said tax is not yet collected, but that when the same is collected that said defendants will not pay the same or any part thereof to the plaintiff, as required by said peremptory writ of mandamus."

On the same day (November 11, 1925) an order was entered which recited the filing of the motion for citation of said city officials for contempt of court and prior proceedings, including the issuance and provisions of the peremptory writ of mandamus, the suing out of the writ of error to the Supreme Court and the affirmance of said peremptory writ of mandamus, as evidenced by mandate filed, and the filing of the report by said city officials on November 10, 1925, stating the substance thereof. It was then stated that said report was contumacious and contemptuous on its face and "in effect says that the defendants will not comply with or obey said peremptory writ of mandamus."

Said city officers were therefore cited to appear before the circuit court at the city of Macon on December 21, 1925, to show cause why they should not be adjudged to be in contempt of said court for their refusal to obey said peremptory writ of mandamus. On December 9, 1925, the city officials filed a motion to set aside the complaint, in which motion said officials explained that they did not mean to be contemptuous in alleging that the payment upon the Heather judgment of a balance, if any should be left from the 1925 tax collections, would be harmful and would render said officers guilty of misfeasance in office, because Section 1685, Revised Statutes 1919, is in conflict with Section 1 of the Fourteenth Amendment to the United States Constitution.

The said motion further recites the inconvenience, hardship and even public disaster which would ensue if the salaries of certain city officers, outside of those named in Section 1685, were not paid. It is recited that said questions had not been previously raised and decided and that said decision was necessary for the future guidance of said city officers. Wherefore, they prayed that the citation be quashed. This motion was overruled.

On November 21, 1925, the said officers filed their amended return, in which the allegations made in their motion to set aside the complaint were substantially repeated. The court held this return to be insufficient. Thereupon the following entry of record appears:

"Now, at this day come defendants and file their return to this cause and the court finding the same to be insufficient rules against defendants on same, and now for their amended return, defendants

say they will abide the ruling and writ of mandamus of the court in this matter.

"CITY OF PALMYRA,<br>"By FRANK J. BERNHARD, Its Mayor."

Upon said announcement of compliance, the case was continued over the term. At the June term, 1926, the case was set for the first day of the September term. On September 20, 1926, said city officers filed another report to the peremptory writ of mandamus, wherein they stated that a full assessment of all the taxable property within the limits of the city for 1925 was duly and regularly made and a levy of fifty cents for each one hundred dollars' valuation for general purposes was made. It was further stated that no money had been paid or turned over to the city treasurer or to any one else from said fifty-cent levy for 1925 and that there were no funds in the treasury subject to the payment of warrants issued by the council.

It was further alleged "that on the 15th day of June, 1926, the Collector of the said City of Palmyra filed her report showing that under the fifty-cent levy for general purposes, she had collected and had in hand general taxes in the sum of $4,654.80; that the Council of said City of Palmyra on said date, by resolution, ordered the Collector to turn over to the Treasurer her collections for the said general funds, but that said Collector declined and refused to turn over said collections to said Treasurer, without first deducting 2.81 per cent thereof as and for her commission for collecting said moneys. Respondents further state and show to the court that the Council of the said City of Palmyra declined to allow said deduction in obedience to the mandate of this Honorable Court, whereupon said Collector refused, and still refuses, to pay said moneys to the Treasurer of the said City."

On October 25, 1926, Mrs. Heather, through her counsel, filed reply to the said return, in which the issuance of the peremptory writ of mandamus was recited and reference was made to the foregoing report of September 20, 1926. It was then alleged that Mrs. Heather and her counsel understood that the peremptory writ of mandamus should be so interpreted and construed as to allow deduction by the city collector of her usual and ordinary commissions and that the amount to be paid to the city, so long as the peremptory writ of mandamus remained in force and her judgment remained unpaid, was the net amount of said tax collected. She further alleged her willingness to have said writ so interpreted by the court and that the mayor and council should settle with the city collector on that basis.

It was then charged that the said Collector's alleged refusal to pay over the taxes so collected was collusive and was instigated by the city officers themselves for the purpose of evading payment of the judgment and in contempt of the peremptory writ of mandamus.

The suggestion was made that the city officers be adjudged to be in contempt, and that they be required to accept the money tendered by the said collector and to apply same in accordance with the peremptory writ.

On November 8, 1926, the court ordered that the mayor and council accept, or cause to be accepted, from the city collector the sum of $4,538.53, the amount collected, less commissions claimed by the collector, and that they apply same to the payment of the Heather judgment, in accordance with the peremptory writ, and that they file report of their action on November 11, 1926.

On said November 11, 1926, the city officers filed a return to the order of November 8, 1926, stating "that the Collector of Revenue of the City of Palmyra has not paid over to the defendants or to the Treasurer of the City of Palmyra any sum as and for taxes collected under the levy for general purposes for the year 1925, and that since the order of November 8th aforesaid was made and entered said collector has not paid or tendered payment of any sum. Defendants further state and show to the court that under the charter and laws governing the city of Palmyra and these defendants as officers thereof, the defendants, the mayor and council of said city, have no authority to receive and accept payment of any money, and that all payments are, by law, required to be made to the treasurer of said city." They further allege that there were no funds in the treasury against which a warrant could lawfully be issued to apply to said judgment.

Thereupon the trial court, after reciting the various proceedings leading to the making of its order, entered the judgment, here complained of, whereby Frank J. Bernhard, mayor; E. G. Schnitzer, Henry G. Frankenbach, Emil G. Nill, F. C. Heinze, J. W. Metcalf and August Berghofer, councilmen, were adjudged "guilty of this court and its judgments, in willfully, contumaciously and intentionally disobeying, as well as continuing to wilfully, intentionally and contumaciously disobey, said peremptory writ of mandamus heretofore issued by this court on October 1, 1923, and the order and command therein contained, and the order made by this court on the 8th day of November, 1926."

Said officers were thereupon ordered committed to the county jail of Macon County "until such time as they shall comply with the terms of said peremptory writ of mandamus and the order and command of this court therein contained, or until otherwise discharged therefrom by the order of this court, or otherwise pursuant to the law, and that commitment be issued accordingly, which said commitment shall contain a certified copy of this order and judgment."

Motions for rehearing and new trial and a motion in arrest were filed and overruled. Appeal was granted to this court. Appeal bonds

in the sum of $25,000 were filed and approved, conditioned upon the preservation by appellants of all sums levied and collected under the peremptory writ of mandamus and the performance by them of the judgment of the Supreme Court. This appeal bond was signed by seventy-five or eighty persons as sureties. Such numerous sureties indicate either that the individual signers were possessed of very little of this world's goods or that a rebuke of the trial court, for daring to make the order committing the said officers for contempt of court, was intended. From the trend of the entire record, the latter explanation seems more probable.

Before the order complained of was made, certain oral evidence was introduced. Counsel for Mrs. Heather called the Deputy County Collector, who testified that John W. Metcalf, one of the councilmen, and the husband of the city collector, had told him that the general fund of the city was low and asked if any city back taxes had been collected. Upon being answered in the affirmative, Metcalf said he would like to have the money turned over to the city, but that the 1924 back taxes should be separated from the 1925 back taxes, because the county collector would not be allowed to retain his commission upon the collection of 1925 back taxes. The sum of one hundred and fifty dollars to two hundred dollars in back taxes for 1925, a large portion of which belonged to the general fund, had been collected and was on hand. The County Collector had not declined to pay it over, but testified that he would first deduct his commission.

Mrs. Metcalf, the city collector, and also the wife of Councilman Metcalf, was called as a witness. She held her office by the appointment of the mayor and council. She had declined to pay over general taxes collected for 1925 unless her commission was deducted. She had tendered $4,538.53. She denied having any understanding with the city officers relative to refusal on her part to turn over the taxes collected without deducting her commissions. The mayor and councilmen had made no effort to get the money from the city collector and had even reappointed her to that office after she had refused to turn over the money. Her bondsmen were entirely solvent. No suit to recover the money had been filed against her. It appeared that the minutes of a council meeting held on June 15, 1926, recited that Mrs. Metcalf's report "was rejected for the reason it was not in obedience to the mandate of Judge DRAIN as to the general fund in the Heather case. The council, by vote, ordered the collector to turn over to the treasurer her collections for the general fund in accordance with the above mandate, but she refused to do so."

Evidence was offered in an attempt to show that the minutes of the council meeting of June 15th were changed, or at least were written up at length, after June 23rd.

It seems that the city officers construed the peremptory writ of mandamus as not permitting deductions of commissions because payments to the collectors were not provided in the exception to the order which was drawn in the language of Section 1685, Revised Statutes 1919. It also appears that these officials were very particular to advise both the city and county collectors that any deductions for commissions would violate the peremptory writ.

The reason for the stubborn resistance to the order, requiring payment of the Heather judgment, on the part of the mayor and councilmen of Palmyra, does not appear in the record. The validity of that judgment has been conclusively determined. It has also been conclusively determined that the peremptory writ of mandamus was properly and lawfully issued. After the Kansas City Court of Appeals had affirmed Mrs. Heather's judgment and after this court had affirmed the order of the trial court in issuing the peremptory writ of mandamus, the time was forever past when questions could be raised going to the validity of such judgment and of such order.

It is impossible to read this record without becoming convinced of the studied and determined efforts of the mayor and councilmen of Palmyra to defeat the collection of the Heather judgment at all hazards. It is entirely clear that the stubborn resistance offered to the lawful orders of the Macon County Court was not born of a legitimate and commendable desire on their part to protect the city under the law, so much as it was to defy the law and to defeat the collection of said judgment in contemptuous disregard of the law and the court's orders founded upon and justified by the law.

In defending the city to the utmost against the claim for damages put forward by Mrs. Heather, appellants were entirely justified. In vigorously resisting the alternative writ of mandamus and in showing reasons why the ordinary and necessary functions of the city should not be endangered in order to save money with which to pay the Heather judgment, and even in appealing to this court after the granting of the peremptory writ, appellants were doubtless only doing their duty as city officers and cannot justly be subjected to criticism. But after they had fought such a good fight for the city and had been driven from the last intrenchment known to the law, it was their duty as good citizens and as law-abiding officers to submit to the orders of the trial court.

But the conclusion is irresistible, on the record before us, that appellants encouraged their appointee, the City Collector, in her refusal to turn over the proceeds of the 1925 tax collections. Had they honestly wanted to obey the peremptory writ, ordinary respect for the circuit court's order would have suggested an application to that court for modification of its order, to the end that the net proceeds could be received and applied on the Heather judgment. That

they approved and applauded the collector's refusal is all too manifest by their act in reappointing her as collector after such refusal.

The patience of the trial judge, in face of the ill-concealed bad faith of appellants and their contemptuous evasions of his order, was evidently taxed to the limit. He exhibited the utmost consideration and fairness, so far as can be gleaned from the record. His order committing the appellants was eminently just and was only entered as a last resort to prevent the lawful orders of his court from being. ruthlessly disregarded and disobeyed. It is with such attitude toward the justice and propriety of the court's order, gleaned by us entirely from the record brought here by appellants, that we approach the consideration of the questions raised upon such record.

As appears from the recitals of the order appealed from, the peremptory writ of mandamus not only commanded the city officers to assess, levy and collect a tax of fifty cents on the one hundred dollars' valuation on all taxable property in the city of Palmyra (which it seems they did), but also required that such taxes "when so collected by the proper officers of said defendant, the said city of Palmyra, be paid to the said Julia Tipton Heather, her agents or assigns, except such amount thereof as may be necessary to pay the reasonable salary allowed by law to the mayor, council, assessor, marshal, constable, attorney and a reasonable police force for said city of Palmyra."

It is clear under this record that collections were made sufficient to pay the salaries exempted in Section 1685 and set forth in the peremptory writ and to leave a substantial balance for application upon the Heather judgment. Appellants were required to make such payment., Their contention that the money could not be recovered into the city treasury, because the collector would not pay it over without deducting commissions, and, after the court authorized such deductions, their final reply that there was no money in the treasury because the collector had not paid the money over, were the most palpable quibbles. The insincerity and bad faith of appellants in making such contentions are apparent. They made no showing of any effort on their part to get the collector to pay over the balance of the 1925 tax collections so that they could make a payment upon the Heather judgment. Under all the circumstances the trial court was justified in concluding that the appellants were encouraging the city collector in her failure to pay over such collections.

The city collector was the creature of the mayor and council. If, without their connivance, she had refused to pay over the money, they could have demonstrated their want of collusion in her act by taking steps to remove her, by appointing some other person as collector or by bringing suit upon her bond. Appellants were not commanded merely to receive the taxes collected, and if such taxes were received, to apply same on the Heather judgment. They were

commanded to levy and *collect* such tax and thereafter to pay it over. This they had the full power to do.

A very recent decision by this court is here in point. In State ex rel. Lashley v. Ittner, 285 S. W. 509, we issued our peremptory writ of mandamus compelling a circuit judge to require his court reporter (an appointee of his) to make and furnish a full transcript of the evidence in a criminal case, where an appeal to this court had been allowed, but could not be perfected until such transcript was made and furnished. That is to say, we compelled one officer to compel another officer to do the thing commanded.

The peremptory writ in this case was sufficiently definite. The evidence justified the finding that appellants contemptuously disobeyed such writ by making no honest effort to collect the taxes and apply them to the Heather judgment. They were committed to jail until they complied with the peremptory writ as interpreted by the court; that is, until they required the collector to pay over the 1925 tax collections, less commissions, and applied the proceeds to the Heather judgment. The things, appellants were required to do to purge themselves of contempt and to entitle them to their respective liberties were definite and certain and there is no merit in the contention to the contrary.

The case of State ex rel. Poole v. City of Willow Springs, 183 S. W. 589, has no application here. That was an appeal from an order granting a peremptory writ of mandamus. The defenses and contentions, allowable in an appeal from an order committing parties for contemptuous disobedience of a peremptory writ which has become final, are much narrower and most restricted than those permissible when the propriety of issuing the peremptory writ itself is up for determination. The questions here are only: What did the peremptory writ command appellants to do? Did they do it? If they did not do it, was their failure to do so contemptuous?

Appellants make numerous contentions which go only to the propriety of issuing the peremptory writ in the first instance. For example, they contend that Section 1685, Revised Statutes 1919, upon which the peremptory writ was based, is invalid and unconstitutional; that the Legislature has no power to embarrass the city in protecting the public health, safety and morals of the city by diverting the funds of the city from the prosecution of such ends to the payment of the Heather judgment. They contend that Section 1685 has no application to the city of Palmyra, because it is a city organized under a special charter.

These and kindred contentions come too late and cannot now be asserted in defense of appellants' conduct in ignoring and defying the peremptory writ of mandamus. They are defenses which should have been urged, if they were not, against the issuance and affirmance of

the order which granted such peremptory writ. They come too late now for consideration. In this collateral proceeding, appellants cannot attack the validity of the peremptory writ.

One of the contentions is that "the commands of the judgment are impossible of observance, in this that whereas the court orders defendants to approve the settlement of the collector with her commissions deducted from the amount tendered, the order of commitment directs that defendants remain committed *until the commands of the peremptory writ of mandamus be complied with.* This writ does not authorize a deduction of the collector's commission. The judgment is, therefore, void on its face for indefiniteness and uncertainty."

In view of the court's interpretation of its peremptory writ, as permitting deductions of collector's commissions, this contention is without merit. It is not specious merely; it does not even have the appearance of good faith.

Another example of the extremity to which appellants are driven appears in Assignment X of "Points and Authorities" in their brief, which is: "The plaintiff undertook to proceed against defendants under Section 1685 of the Revised Statutes of Missouri 1919. This section purports to authorize a judgment commanding defendants to levy, assess and collect taxes and apply the money raised thereby to the payment of plaintiff's judgment after first deducting from the amount raised the reasonable salary of the mayor, council, assessor, marshal, constable, attorney, and a reasonable police force of the city. The statute does not except the collector. It follows, therefore, that when plaintiff offered to waive the commission or salary of the collector, she abandoned her right to proceed under the statute and is left without any remedy in this case."

Merely to state this contention is to refute it. Despite the rather misleading title of this case, this is no longer a proceeding between Mrs. Heather, on the one hand, and the city of Palmyra, on the other. It is a proceeding between the public, as represented by its constituted court of justice, and the appellants. [13 C. J. 7.] Mrs. Heather could waive nothing by her request to have the court interpret the peremptory writ so as to permit the deduction of collector's commissions. Even if appellants are correct in construing Section 1685, as not permitting deductions for collector's commissions, yet, if the court, at Mrs. Heather's request, permitted such deductions, they cannot complain. Their duty under the writ was to get such amounts as they could and to apply such amounts to the payment of the Heather judgment. This contention does not even have the doubtful virtue of plausibility.

There is likewise no merit in the contention that appellants had no notice of, or a hearing upon, the complaint upon which they were ad-

judged guilty of contempt. It is upon this premise that they plead want of due process of law. The order to show cause why appellants should not be adjudged guilty of contempt was pending over a year. It was continued from term to term. Appellants were notified at the making of such order. They were present or represented at each and every step in the proceeding. Their bad faith is evidenced by their agreement, in 1925 and after the citation was issued, that they would comply with the writ. Their subsequent change of heart and attempts to evade the commands of the writ present every appearance of want of sincerity and good faith on their part.

It is said that there was no judgment finding appellants guilty of contempt because, in its order, the court used this language: "Guilty of this court and its judgments." If appellants' substantial rights were prejudicially affected by the court's failure to use technical language adjudging them "guilty *of contempt* of the court and its judgments," the error could readily be cured by reversing the judgment and directing the court to enter the kind of judgment it was authorized to enter, and evidently intended to enter, in the first place. This seems unnecessary, however, as the judgment recited the finding of every fact which authorized the court to commit appellants until such time as they should comply with the terms of the peremptory writ. By finding that appellants wilfully, contumaciously and intentionally disobeyed (and continued to do so) the peremptory writ of mandamus, the court found them guilty of contempt of the court and its judgments.

We have not reviewed the authorities cited by appellants. Most of them go to the validity of the peremptory writ, for disobedience of which appellants were adjudged to be in contempt. The validity of the order granting such peremptory writ is not open to attack by appellants on this appeal. They were ordered to levy and collect a tax and to apply all but a specified part thereof to the payment of the Heather judgment. No contention is made that, if they had actually received the money in the city collector's hands, it would not have been applicable to the payment of said judgment under the terms of the peremptory writ. Appellants failed and refused to have their collector pay said money into the city treasury in order that a warrant could be issued in compliance with the peremptory writ. Such failure and refusal were clearly in contempt of the letter and spirit of the trial court's peremptory writ. That court very properly ordered appellants committed to jail until they complied with the peremptory writ.

We find no error which would justify this court in interfering with the trial court in compelling obedience to its said order, theretofore duly adjudged to be lawful, by committing appellants until they

comply with such order. When appellants are so committed upon the going down of our mandate, they will hold the key to their own cells. That key is obedience to the peremptory writ, in good faith without evasion or equivocation.

The judgment of the circuit court is affirmed. All concur.